Next case is Polo Gear Intellectual Properties v. PRL USA Holdings, 2016, 2478 and 2568. Mr. Rowan? Yes, Your Honor. May it please the Court. Your Honor, we submit that there are at least four specific errors of law that were committed by the TTA in denying the Rule 60 motions in this case. The first was the failure to address Rule 60b-6 at all, and this Court's jurisprudence makes clear that that's a separate ground from 60b-1. Before you get started, can I ask you about something? Do you really think it's appropriate to compare a member of the Bar to a suicide bomber? I mean, honestly, I understand rhetoric, but that is a little beyond the top. I mean, there's no suggestion that this person has been disbarred or done anything, you know, to warrant that. And even if they've been disbarred, comparing them to a suicide bomber is beyond the pale. I apologize for the rhetoric, Your Honor. I was trying to make the point, which is critical to our argument, that Mr. Mariani, on multiple, multiple occasions, deceived the client by saying facts that weren't true, making representations that weren't true. The client relied on those and ended up in a terrible predicament because it did rely on those. That was my point. I'm sorry for the rhetoric, Your Honor. I apologize to the Court. Going back to the Board's errors of law, in addition to completely ignoring Rule 60b-6, it applied the wrong standard to 60b-1. It stated that that was an extraordinary remedy requiring exceptional circumstances, which is simply dead wrong. It also refused to acknowledge that its order was, in fact, a default judgment when its show cause order specifically says it was, and that has policy implications in terms of the remedial nature of Rule 60 with respect to default judgments and the policy. I mean, the Board's language is clearly a little loose, but it makes pretty clear it's not a default judgment in the sense that it's ordinarily used. It's defaulting you for a failure to prosecute, which under its terminology is this lack of interest or something. Yes, Your Honor. Isn't that the basis for it? Yes, Your Honor, but first of all— That's different than the typical default judgment you're referring to. Yes, but I would respectfully submit, Your Honor, that that is a distinction without a difference. As pointed out in the LAL versus California case in the Ninth Circuit, that was a failure to prosecute. The Court pointed out that that's merely the converse of a default of the defendant. It happens to be the plaintiff in that case that is essentially defaulted for not proceeding. The other cases that we rely on involve a multitude of events—failure to reply to a motion for summary judgment, failure to reply to a motion to strike a preliminary injunction, failure to report to the Court on settlement negotiations, failure to attend hearings. All of those could logically be characterized as evidence of a loss of interest. In fact, I'd submit that virtually every default other than one in the discovery context where you don't produce discovery could be characterized as a loss of interest. I don't see how that differs, Your Honor. Now, the Board went through the pioneer practice. It found one was in favor of excusable neglect, the other was against, and then the third weighs strongly against. Why should we interfere with the Board's conduct of its business? Your Honor, because, Your Honor, it was making those decisions, first of all, through the wrong prism of the law. And it didn't address Rule 60b-6 at all, which— Isn't 60b-6 a harder standard than 60b-1? It's a different standard. It is harder in the sense, Your Honor, yes, it does require— So what makes the difference if it didn't address 60b-6? If you weren't going to win under 60b-1, you certainly weren't going to win under 60b-6. I don't think so, Your Honor, because the case law under 60b-6, which is all of the primary cases that we decided, community dental, Lowe v. California, the Primm's case, the court of claims affirmed by this court, the Jackson case in the D.C. Circuit, all of those were decided under Rule 60b-6, where they found that these actions by the various attorneys in effectively abandoning his client by not doing the various things that I enumerated were exceptional circumstances and determined that 60b-6 relief was appropriate. I would submit, Your Honor, that logically a similar analysis would apply under 60b-1 because you first decide under the case law here, which there isn't really anything to the contrary, that when an attorney's conduct is so egregious, gross negligence, abandoning the client, misleading the client, which brings us back to our initial point, Your Honor, that effectively does not have representation. Therefore, there's no agency relationship. That's explained very well in the Supreme Court decision that we pointed out to the court that was cited in the recent Hill v. Warren case decided last month in the Eastern District of Michigan, that once you decide that there's no agency relationship, the policy for attributing the attorney's negligence, and in this case, I mean, we'll stipulate that his conduct was inexcusable. Which, again, was my imperfectly or badly articulated point, that it was inexcusable, but that very circumstance means there's no agency relationship. You can no longer attribute his sins to the client. You've got to look at what the client did. And in terms of 60b-1s— In other words, his conduct was inexcusable, but your client's conduct was excusable. That's exactly our position, Your Honor, and the reason that is is because each time an event came up, the attorney, Mr. Mariani, would assure the client—and this isn't a made-up, after-the-fact thing. There were 18 or 20 instances cited in our reply brief, of which at least six or seven were emails and texts from Mr. Mariani to the client saying, hey, I am filing the representation this week. The case is proceeding smoothly. When finally—I mean, when it did become apparent that it wasn't, he wrote the client and said, don't worry about it. He said, refresh it. I mean, honestly, you're a sophisticated business, and you're not the typical pro se litigant. If you know that he's continuously missing deadlines, and the court has already told you, you've missed one deadline, tell me in another 30 days why I shouldn't dismiss your case. If you know he's not doing your job, even though he says he's doing it, don't you make sure that you get something in on that next deadline? Because you were getting all these notices. Yes, Your Honor. And each time they did, they would contact Mr. Mariani. Now, keep in mind, Your Honor, I mean, this is really—this is a small business. It made money over time, as was pointed out in the trademark case, but it's a two-person operation. They make saddles. They make bridles. They make boots for polo. I mean, and I'm sure they're very good at that, but they are not experienced business people. They don't have—I mean, experienced legal people. They don't have an in-house legal department. They don't engage in legal business like an insurance company or a bank would. They're selling this polo gear. The attorney that they chose is also not some guy they picked off the street or got off of Angie's list. He's someone that was not only recommended to them, but they'd used for a number of years. He was a senior partner in the firm that they left. He was supposedly very experienced. They trusted him, Your Honor. They were lay people trusting their attorney. I think under our system of representation, you ought to be entitled to trust your attorney, particularly when you vet them to begin with. I don't think—I mean, in each of the cases that we cited, the plaintiffs were— or plaintiffs or defendants were relying on their counsel and were getting misrepresentations, and in those cases the court found that was an extraordinary circumstance under Rule 60b-6, that it was an exceptional circumstance. And it wasn't really much different than what we have here, all the deadlines that were missed in those cases. In this case— In light of what you've said about Mr. Mariani, is your client bringing a malpractice case? Your Honor, we're waiting to see what happens here, Your Honor. I mean, that will tell us whether or not there are damages. In that regard, I would point out that it is the policy— And what you've described, it seems to me, if you're a member of the same bar as him, and if your description is accurate, you may have an ethical obligation to report him to his state bar for his conduct towards his clients if your descriptions are, in fact, accurate. You might want to consider that in addition to the malpractice suit. You may have an obligation because it seems as though he may have behaved unethically towards his clients if you're, in fact, correct. Well, Your Honor, I would submit—I mean, the facts are the facts, and there isn't any dispute about the facts. And so that is a logical conclusion from the facts. As the court pointed out in the Lau case in California, which Your Honor cited in the Mora case, I'm not a member of the Florida bar, which he is. I'm not a member of the same bar. I take Your Honor's comments to heart. And the circumstance will be if the decision of the TTAB is reversed, then this may be a no-harm, no-foul situation, and we'll go on to the merits of the case, which is the policy of the law, and particularly in default judgments, that let's get to the merits of the case. What's the harm to PRL? If they're right on the trademark position, they should win. If they're wrong, they should lose. But in this case, we're trying to get back to that point of doing it on the merits. We've got three registrations at issue in this case. There is a host, a dozen more, that are being affected by this case. Those proceedings have been suspended by the TTAB on the basis of this appeal. I'm not sure that's entirely logical, but that's what they're doing. PRL has already signaled that it's going to, because these were with prejudice, use these under an issue preclusion or claim preclusion basis to affect those other cases. It has a whole ripple effect, but it all depends on what happens here today, Your Honor. It's either no harm, no foul, or a lot of harm, and there's no point in bringing a malpractice suit until you find out what the harm is, Your Honor, in response to that question. In reversing the TTAB standards, we've got the abuse of discretion. We've got the capriciousness, and I would say the facts were analyzed wrongly. I realize this is not de novo, but we have four very clear errors of law where the court was using the wrong standard. It's hard to reach the right result when you start out with the wrong standard, and you don't look at 60B-6. You start out with this idea that you have to have exceptional circumstances for 60B-1. You don't acknowledge that you've got a default judgment with the policy implications of that, and you get this attorney-client relationship entirely backwards, where no less than the Supreme Court and half a dozen other circuit courts have said, and Judge Moore's decision acknowledged in the Morris case, which was an unfortunate case, but the court pointed out that had the circumstances been different. Mr. Rowan, you're well into your rebuttal time. Would you like to save it? I'd like to save it, Your Honor. Then we'll save it for you. Thank you very much. Mr. Schloss. Good morning. May it please the Court. The Board applied the Supreme Court's pioneer standard through its Pumpkin case, which this Court in turn ratified in the first health case, and that standard that the Board uses routinely prioritizes the third pioneer factor, which is what the Board did here. I would just like to briefly address a couple of quick factual statements that I believe my colleague, Mr. Rowan, may have inadvertently misstated. I think Mr. Rowan referred to 18 instances or 18 e-mails from Mr. Mariani. In fact, there was really only one affirmative communication from Mr. Mariani that's the predicate for much of the appellant's argument, and that is a text message saying, in response to repeated prods to file an appearance at the Board, we'll do so this week was the statement. That's the only statement that can be characterized as it's been characterized in the briefing as a lie. I'm certainly not defending Mr. Mariani's conduct, but the Board also made clear that it was not merely holding Polo Gear to Mr. Mariani's conduct. It faulted Polo Gear itself because Polo Gear had actual notice, understood some statements in Mr. Feller's declaration notwithstanding, understood that there were some potentially significant consequences for missing those deadlines, and received advice that I guess one of the other factual issues here is there are these references to going smoothly, and I believe Mr. Feller refers in his affidavit that he was assured it was going smoothly. There's no documentary evidence that there was any statement like that made, except for one statement that said, I believe there was a typo or a grammatical error, it said Polo Gear will refresh, and that was the only statement there. Didn't the Board find there was no prejudice to PRL, and in fact there was no bad faith on Polo's part? That's correct, Your Honor, and PRL didn't assert prejudice at that time, although a witness has since died, as we know to interpret. In any case, other than Mr. Feller's own statements about assurances he says he received, there's no documentary corroboration of those assurances beyond the one that I mentioned, and correspondence about working on an affidavit, which is all fine and good and maybe a litigation strategy, but has nothing to do with the simple, relatively ministerial act of simply filing an appearance. Mr. Mariani, there's nothing in the record that suggests for all his alleged misdeeds, there's nothing that suggests that he ever actually said that he had filed an appearance, and indeed he hadn't, and his client repeatedly expressed concern about that fact. So I think the facts in the law are fairly straightforward, and I'm happy to entertain any other questions that Your Honor may have. Thank you, Mr. Schloss. Mr. Rowan has two and a half minutes of rebuttal time if you need it. Thank you very much, Your Honor. I'm a little bit perplexed by the challenge to my facts. First of all, I didn't say there were 18 or 20 e-mails. I said there were 18 or 20 communications, of which at least six were from Mr. Mariani. Those are documented in the bullet points on pages 3, 4, and 5, well, 6 and 7 of our reply brief.  We have texts from Mr. Mariani starting on November 4th, 2015, going through January 21st. So there is documentary evidence to back up what my client is saying. And in terms of those, the first one says, use my new address. Obviously, the next one from Mr. Mariani says specifically he was going to be filing the appearance of counsel this week. That's in an e-mail from him. Another e-mail from him deals with the preparation of the evidence. Why would you be doing that if you weren't representing the client? Another, going over the affidavit and making the affidavit to Mr. Fellers, and this was in preparation for also his deposition, their e-mail from Mr. Mariani January, saying he's going to be speaking to the client that afternoon. There's the e-mail on January 20th, this refresh language, which obviously means revive, indicating, again, the 20th of January, 2016. And then even as late as the 21st, he's talking about edits to the affidavit. I mean, in each of those cases, the very clear either statement or implication is, I am representing you and we are working on this case. And, in fact, he discusses that's not a documentation but a sworn statement from Mr. Feller that he was explaining these notices we're getting as basically bureaucratic errors of the TTAB that wasn't keeping up with the actual facts. On a final point on the prejudice, there's nothing in the record with respect to the death of this witness. It wasn't before the Board. The Board found no prejudice, and I will, if we're talking about points out of the record, the only support for that is a Rule 26 disclosure that lists that witness as one of five witnesses saying the same thing. It's all cumulative. There is no prejudice. Thank you, Mr. Rowland. We'll take the case under advisement. Thank you, Your Honor.